# Exhibit G

Case #: <u>CV-25-1759</u>

Recording Time: <u>N/A</u>

Recording Date: <u>November 13th, 2024</u>

Participants: <u>Judge Richard Bailey, Emily Spataro, Michael Leonetti, Miguel Barrios, Spanish Interpreter</u>

Type: <u>Immigration Interview</u>

Method: <u>Virtual</u>

1

2  BAILEY:    Today is November 13th, 2024. This is Immigration Judge
3  Richard Bailey at the Elizabeth Immigration Court. Counsel for the
4  Department, your appearance please.
5
6  SPATARO:    Your Honor, Emily Spataro on behalf of the Department.
7
8  BAILEY:    Good afternoon. To all parties present, the use of
9  recording devices is prohibited during these proceedings. Unless
10 otherwise noted, all respondents are appearing virtually from the
11 Moshannon Valley Processing Center. We are joined this afternoon by
12 a Spanish language interpreter. Madame Interpreter, please raise
13 your right hand. Do you swear or affirm you are competent to
14 interpret between Spanish and English and you will do so accurately
15 and completely?
16
17 INTERPRETER:    I do, Judge.
18
19 BAILEY:    Thank you, you may lower your hand.
20
21     [END OF PART 1 OF THE RECORDING]
22
23     [START OF PART 2 OF THE RECORDING]

24

25  BAILEY:   This is a custody redetermination hearing in the matter

26  of Miguel Gregorio Vamondez Barrios, 240176787. Respondent is

27  present and represented by counsel appearing by Webex. Counsel,

28  your appearance please.

29

30  LEONETTI: Good afternoon, Your Honor. Michael Leonetti from the

31  Broncs defenders for Mr. Vamondez.

32

33  BAILEY:   Good afternoon. Good afternoon to the respondent. What is

34  your full name?

35

36  INTERPRETER:   [previous question asked in Spanish]

37

38  BARRIOS:  Miguel Gregorio Vamondez Barrios.

39

40  BAILEY:   Sir, can you move yourself a little closer to the table

41  so that that court can see you?

42

43  INTERPRETER:   [previous question asked in Spanish]

44

45  BAILEY:   Thank you. Attorney Leonetti do you waive interpretation

46  of procedural matters and legal arguments?

47

48  LEONETTI: Yes, we do, Your Honor.

49

50  BAILEY:   For bond purposes, the court will mark the exhibits as

51  follows: Exhibit B-1 is the bond redetermination request filed by

52  respondent on November 7th, 2024. Exhibit B-2 is evidence filed by

53  the Department on November 8th, 2024, including tabs A and B.

54  Exhibit B-3 is evidence filed by respondent on November 12th, 2024.

55 And one moment while this loads. This includes Tabs A through F.
56 Attorney Spataro, does the court have jurisdiction?
57
58 SPATARO:  Yes, Your Honor.
59
60 BAILEY:  Attorney Leonetti, could you please make your arguments
61 for release on bond?
62
63 LEONETTI: Yes, thank you, Your Honor. Today, Mr. Vamondez asks the
64 court to grant bond because he's not a flight risk nor a danger to
65 his community. Release would allow him to reunite with his wife,
66 who is a US citizen and is present today, Gloria Vamondez Browning
67 [PH], and their three children, Ila, Lily, and Milena. As their
68 main caregiver, he's eager to return to his family. And I'll begin
69 with flight risk, so if released, he would live at the family's
70 address at 1778 E. 53rd Street. That lease is in the record, page 17
71 of Tab A. He'd be living with his wife Gloria and their three
72 daughters. The oldest is newly four years old. The second youngest
73 is one, and their newborn is seven months old. All the children are
74 also US citizens. Ila is – and Lily are Mr. Vamondez's step
75 daughters, and Milena that he and his wife have had together. His
76 wife Gloria's letter of support is in the record at Tab A, where
77 she describes Mr. Vamondez as the father figure that she's always
78 wanted for her daughters. And she also describes that she is
79 pursuing a degree in dental hygiene in order to raise her own
80 income but that she's had to drop out of school and, um, scale back
81 work temporarily now that she's providing around-the-clock child
82 care. If released, Mr. Vamondez would be the primary caregiver to
83 their daughters. I also wanted to direct the court's attention to
84 the evaluation of his – of their oldest daughter Ila, who has been
85 diagnosed with autism spectrum disorder, ASD, since 2022. Um, and

86  as Mrs. Browning describes in her letter of support, Ila has been
87  extremely dependent on Mr. Vamondez's presence in her life. She –
88  she responds mostly to – to his – his calming nature when she's
89  having her episodes. The psychologist who evaluated Ila placed her
90  functioning at around the level of a 12-month-old when she was
91  almost two years old, showing that she has a significant
92  developmental delay. Um, as Ms. Browning writes in her letter,
93  Miguel is one of the very few people who can calm her while she's
94  learning to navigate through her sensory differences. Um, I've also
95  included a Tab D, two studies just highlighting the importance of
96  parental presence and involvement on the development of children
97  with autism, the first showing that parents being actively
98  involved, uh, in a child with ASD's education leads to improvements
99  in their performance and emotional well-being. And of course, Ila
100 at four years old is transitioning into school, and Mr. Vamondez
101 will be actively involved in that transition of her time in school
102 if released. The second – second study, excuse me, shows how
103 parental stress can negatively affect children with ASD leading to
104 ASD interventions being less effective and causing disruptions in
105 their development. His release would greatly relieve stress on his
106 wife and would benefit his daughter in this way as well. Regarding
107 relief, Your Honor, he has several pending applications, so as I
108 said, his wife Gloria is a US citizen. They have a pending I-130.
109 The receipt notice is at page 22. Um, he also has a pending
110 application for TPS for Venezuela. Page 24 is the receipt notice.
111 And of course, he has his I-589 application, which is pending
112 before this court with an IH set for January. And that 589 as filed
113 by his prior counsel is available at page 26. Um, and the last
114 point on flight risk, Your Honor, is that he has prospect for
115 employment if released. And once he receives authorization to work,
116 his father-in-law has provided a letter of support stating that,

117 um, you know, that Miguel will be responsible for child care once
118 he's released but then in the future he intends to offer him a
119 position within that company, which he owns and is responsible for
120 allocating jobs for. Um, and that Tab E, the court can see that he
121 has taken a course on construction safety while detained and is
122 taking steps to prepare himself for that employment. To touch on
123 dangerousness, Your Honor, he has been arrested, but he has one
124 conviction for petty larceny in last year in Nassau County. Um,
125 three of his arrests have resulted in dismissal. These are the
126 Queens cases that are available at pages 81 to 84 of the record.
127 These were initiated by his mother-in-law but has since been
128 rescinded and dismissed. She also provided a letter of support
129 after the conclusion of these cases, um, which is available at Tab
130 C. In addition to these cases which have already been dismissed,
131 um, he has a few open cases. His – his attorney in the Broncs has
132 provided a letter at page 80 of the – of Tab E explaining that he
133 expects that case to be dismissed as well. As this arrest was over
134 six months ago, the prosecution has already passed the speedy trial
135 deadline. And his attorney has presented a motion to dismiss that
136 case. The next court date is December 5th. And he stated his belief
137 that it will be dismissed. As to his other cases, he has two open
138 in New Jersey and one in Pennsylvania. None of these can be
139 resolved as long as he's detained. There is a letter from his – his
140 – his Pennsylvania attorney explaining that these can't be resolved
141 without his presence and also communications from the New Jersey
142 court. In addition, Your Honor, his family attests to the fact that
143 he is not a dangerous person. In his mother-in-law's letter of
144 support she writes that, quote, "His arrests don't define him.
145 Miguel has never been violent with me or anyone in the family. And
146 I know he is not a dangerous person in any way." His father-in-law
147 also calls Mr. Vamondez, quote, "a pillar of his household" and

148 says, "I've never taken him as a person of aggression or malintent.
149 He's always been respectful towards me.". Finally, Your Honor, Tab
150 F, he's provided certificates from anger management and adapting to
151 change courses while he's been detained, showing his commitment to
152 a personal growth. But in total his arrest records should not weigh
153 heavily against him as his only conviction is for petty larceny.
154 His cases in Queens have been dismissed, and his case in the Broncs
155 is expected to be dismissed next month. For these reasons, he's not
156 flight risk nor a danger to his community. Thank you, Your Honor
157
158 BAILEY:   Attorney Spataro, any – what's the Department's position
159 here?
160
161 SPATARO:  Your Honor, the Department would respectfully oppose the
162 imposition of bond in this case. As far as danger, Your Honor, the
163 Department does have concerns about the weapons charges in this
164 case. I understand counsel's representations and that of his
165 defense counsel. However, it is usually defense counsel's job to –
166 to, uh, paint the case in the light most favorable to his client
167 without any objective, um, recitation about what exactly were the
168 facts of the case. The State believes – or the Department believes
169 the court is at a disadvantage in order to determine whether or not
170 respondent is a danger, particularly in reference to the weapons
171 offenses. Uh, Department would also argue that theft defenses do
172 pose a danger to property, which is something for the court to
173 consider. And the Department would submit on that. Thank you.
174
175 BAILEY:   Thank you. Attorney Leonetti, any response?
176
177 LEONETTI: Yes, Your Honor, regarding the Broncs case, so his
178 attorney does state in his letter that this is a constructive

179  weapons possession case. He doesn't – he does these [UI]. But he
180  explains in the letter that he was arrested without a weapon on his
181  person. The weapon was recovered elsewhere. And, um, again, that –
182  that – he says that he's confident that it will be dismissed. As to
183  the theft cases, as I – the opening case is in New Jersey and the
184  case in Pennsylvania at this point are just allegations. These
185  cases are not resolved and will not be resolved as long as he's
186  detained. Um, he has an attorney on the Pennsylvania case and has
187  every intention of fighting that case. His New Jersey case, he's
188  not even represented on at this point. Um, so again, these are just
189  – just allegations as to the theft cases, and he just has the – the
190  one conviction at this point. That's all. Thank you, Your Honor.
191
192  BAILEY:    Thank you, Counsel. Look, the – the weapons case in
193  particular is concerning. The court has, as the Department pointed
194  out, very little information about – about the nature of, uh, that
195  allegation. It remains open. I understand his defense counsel is
196  anticipating a dismissal for speedy trial, but it hasn't yet been
197  dismissed, and there's of course, no guarantee there. The sheer
198  number of arrests is concerning to the court. While most of them
199  are property related, there have been the three involving his
200  mother-in-law that were, uh, not property related. And those
201  resulted in dismissals. The court gives them little weight, but the
202  – the sheer number of arrests in general, combined with the fact
203  he's got three opening – three open property-related offenses and
204  then one open gun charge for possession of a firearm and
205  endangering the welfare of a child, the court is going to find that
206  he has not met his burden to establish he is not a danger to the
207  community. And the court is denying bond in this case. Does the
208  respondent reserve appeal?
209

```
210    LEONETTI: Yes, Your Honor.
211
212    BAILEY:   Appeal is due December 13th, 2024. To the respondent, the
213    Court is denying your request for release on bond based on the
214    nature of your open charges.
215
216    INTERPRETER: [previous statement interpreted into Spanish]
217
218    BAILEY:   Your attorney can provide you more information, including
219    your right to file an appeal of this decision.
220
221    INTERPRETER: [previous statement interpreted into Spanish]
222
223    BARRIOS:  Okay.
224
225    INTERPRETER:   Okay.
226
227    BAILEY:   Final for the Department?
228
229    SPATARO:  Yes, Your Honor. Thank you.
230
231    BAILEY:   Thank you. With that we are concluded, Code 8(B).
232
233
234                      Dated this 28th day of April 2025.
235
236                      /S/ aLanguageBank
237                      _____
238
239
240
```

FOR OFFICIAL USE ONLY