UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

MIGUEL VAAMONDES BARRIOS,
GLORIA BROWNING VAAMONDES
BARRIOS,

                           Plaintiff,

            v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, KRISTI NOEM, Secretary, U.S.
Department of Homeland Security, in her official
capacity,

                           Defendant,

---------------------------------------------------------X

Civil Action No.
25-cv-1759

(Vitaliano, J.)

## MEMORANDUM OF LAW IN RESPONSE TO THE ORDER TO SHOW CAUSE AND IN OPPOSITION TO THE PETITION FOR A WRIT OF HABEAS CORPUS

JOHN J. DURHAM
United States Attorney
*Counsel for Defendants*
Eastern District of New York
271 Cadman Plaza East, 7th Floor
Brooklyn, New York 11201

April 29, 2025

PHILIP R. DePAUL
Assistant United States Attorney
      (Of Counsel)

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES...................................................................................................ii

PRELIMINARY STATEMENT ........................................................................................1

STATUTORY AND REGULATORY FRAMEWORK............................................................2

FACTUAL BACKGROUND ............................................................................................4

STANDARD OF REVIEW ..............................................................................................9

ARGUMENT.................................................................................................................10

   I.  THIS COURT LACKS JURISDICTION ................................................................10

      A. 8 U.S.C. § 1252(g) Bars Review Of Challenges To The Execution Of Removal Orders...................................................................................................10

      B. 8 U.S.C. §§ 1252(a)(5) And (b)(9) Channel All Challenges To Removal Orders And Removal Proceedings To The Courts Of Appeals .................................................13

      C. There Is No Habeas Jurisdiction Because Barrios Is Not In Custody......................15

      D. Even if Barrios Was In Custody, The Court Lacks Jurisdiction Because He Is Not In Custody In This District........................................................................................17

   II. THE COURT CANNOT ORDER THE TRANSFER OF BARRIOS FROM ONE FOREIGN SOVEREIGN TO ANOTHER FOREIGN SOVEREIGN ...........................19

   III. THIS CASE SHOULD BE DISMISSED, OR, AT THE VERY LEAST, STAYED PENDING THE RESOLUTION OF A CLASS ACTION, OF WHICH BARRIOS IS A CLASS MEMBER, IN A DIFFERENT DISTRICT....................................................22

   IV. ANY CLAIM FOR MONEY DAMAGES UNDER 42 U.S.C. § 1983 IS BARRED BY SOVEREIGN IMMUNITY ..................................................................................24

   V. THE PETITION SHOULD NOT OTHERWISE BE CONSTRUED AS A CLAIM FOR MONEY DAMAGES....................................................................................25

CONCLUSION..............................................................................................................26

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Akhuemokhan v. Holder,*
No 12-cv-1181, 2013 WL 6913170 (E.D.N.Y. Dec. 30, 2013)..........................15

*Akran v. United States,*
997 F. Supp. 2d 197 (E.D.N.Y. 2014).................................................10

*I.M.v. United States Customs & Border Prot.,*
67 F.4th 436 (D.C. Cir. 2023)........................................................17

*Alomaisi v. Decker,*
No. 20-cv-5059 (VSB) (SLC), 2021 WL 611047 (S.D.N.Y. Jan. 27, 2021)............. 12, 14, 16

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009).............................................................9, 10, 25

*Batalla Vidal v. Wolf,*
501 F. Supp. 3d 117 (E.D.N.Y. 2020)...................................................24

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)...............................................................9, 10

*Bennett v. Blanchard,*
802 F.2d 456 (6th Cir. 1986)..........................................................23

*Bernhardt v. Cnty. of Los Angeles,*
279 F.3d 862 (9th Cir. 2002)..........................................................19

*Biden v. Texas,*
597 U.S. 785 (2022)...................................................................20

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,*
403 U.S. 388 (1971)...................................................................25

*Clinton v. Jones,*
520 U.S. 681 (1997)...................................................................22

*Cody v. Henderson,*
936 F.2d 715 (2d Cir. 1991)...........................................................25

*Crawford v. Bell,*
599 F.2d 890 (9th Cir. 1979)..........................................................23

ii

*Curtis v. Citibank, N.A.*,
226 F.3d 133 (2d Cir. 2000) ........................................................................ 22

*D.V.D. v. U.S. Dep't of Homeland Sec.*,
No. 25-cv-10676 (BEM), 2025 WL 1142968 (D. Mass. Apr. 18, 2025) ...................... 23, 24

*Delgado v. Quarantillo*,
643 F.3d 52 (2d Cir. 2011) .......................................................................... 14

*Department of Homeland Security v. Thuraissigiam*,
591 U.S. 103 ........................................................................................ 20

*Doyle v. Midland Credit Mgmt., Inc.*,
722 F.3d 78 (2d Cir. 2013) ........................................................................... 9

*Egbert v. Boule*,
596 U.S. 482 (2022) ................................................................................. 25

*Forjone v. Dep't of Motor Vehicles*,
No. 19-cv-578 (DRH), 2019 WL 5684437 (N.D.N.Y. Nov. 1, 2019) ............................ 24

*Gillespie v. Crawford*,
858 F.2d 1101 (5th Cir. 1988) ....................................................................... 23

*Goff v. Menke*,
672 F.2d 702 (8th Cir. 1982) ........................................................................ 23

*Harisiades v. Shaughnessy*,
342 U.S. 580 (1952) ............................................................................. 19, 21

*Hensley v. Mun. Ct. San Jose Milpitas Judicial Dist.*,
411 U.S. 345 (1973) ................................................................................. 16

*Horns v. Whalen*,
922 F.2d 835 (4th Cir. 1991) ........................................................................ 23

*Hun v. Kashi Co.*,
No. 15-cv-1391, 2015 WL 5117061 (E.D.N.Y. Aug. 31, 2015) ................................. 23

*J.E.F.M. v. Lynch*,
837 F.3d 1026 (9th Cir. 2016) ....................................................................... 13

*Jama v. Immigr. & Customs Enf't*,
543 U.S. 335 (2005) ................................................................................... 3

*Johnson v. Eisentrager*,
339 U.S. 763 (1950) ................................................................................. 16

*Johnson v. Ramos*,
   No. 12-cv-1795, 2012 WL 1901265 (E.D.N.Y. May 22, 2012)..........................................18

*Jones v. Cunningham*,
   371 U.S. 236 (1963) ....................................................................................................16

*Kiyemba v. Obama*,
   561 F.3d 509 (D.C. Cir. 2009).......................................................................................4

*Kleindienst v. Mandel*,
   408 U.S. 753 (1972) ...............................................................................................20, 21

*Kumarasamy v. Attorney General*,
   453 F.3d 169 (3d Cir. 2006)....................................................................................16, 17

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) ....................................................................................................22

*Lehman v. Lycoming Cty. Children's Servs. Agency*,
   458 U.S. 502 (1982) ....................................................................................................16

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ....................................................................................................20

*Mackey v. Bd. of Educ. for Arlington Cent. Sch. Dist.*,
   112 F. App'x 89 (2d Cir. 2004)....................................................................................23

*Makarova v. United States*,
   201 F.3d 110 (2d Cir. 2000)...........................................................................................9

*Maleng v. Cook*,
   490 U.S. 488 (1989) ....................................................................................................16

*McCoy v. United States*,
   No. 21-cr-276, 2025 WL 974641 (E.D.N.Y. Apr. 1, 2025)...........................................18

*McNeil v. Guthrie*,
   945 F.2d 1163 (10th Cir. 1991).....................................................................................23

*Merlan v. Holder*,
   667 F.3d 538 (5th Cir. 2011).........................................................................................16

*Miranda v. Reno*,
   238 F.3d 1156 (9th Cir. 2001)..................................................................................16, 17

*Moreau v. Peterson*,
   No. 12-cv-201 (NSR), 2015 WL 4272024 (S.D.N.Y. July 13, 2015)...................................10

*Munaf v. Geren*,
   553 U.S. 674 (2008) ................................................................................. 4

*Muñoz v. Dep't of State*,
   602 U.S. 899 (2024) ............................................................................... 17

*Nishimura Ekiu v. United States*,
   142 U.S. 651 (1892) ............................................................................... 20

*Noem v. Abrego Garcia*,
   604 U.S. ---, 2025 WL 1077101 (Apr. 10, 2025) .................................. 15

*Noor v. Homan*,
   No. 17-cv-1558, 2018 WL 1313233 (E.D.N.Y. Feb. 27, 2018) ............ 15

*Ogunwomoju v. United States*,
   512 F.3d 69 (2d Cir. 2008) .................................................................... 15

*Olmeda v. Babbits*,
   No. 07-CV-2140 (NRB), 2008 WL 282122 (S.D.N.Y. Jan. 25, 2008) ... 24

*Owusu-Boateng v. U.S. Citizenship & Immigr. Servs.*,
   No. 22-cv-812 (OAW), 2025 WL 832198 (D. Conn. Mar. 17, 2025) ...... 25

*Patel v. U.S. Attorney General*,
   334 F.3d 1259 (11th Cir. 2003) ....................................................... 16, 17

*Plyler v. Doe*,
   457 U.S. 202 (1982) ............................................................................... 21

*Portillo v. Bharara*,
   No. 09-cr-1142 (RPP), 2012 WL 1648403 (S.D.N.Y. May 10, 2012) ... 16

*Preiser v. Rodriguez*,
   411 U.S. 475, (1973) .............................................................................. 25

*Rasul v. Bush*,
   542 U.S. 466 (2004) ............................................................................... 16

*Reno v. American-Arab Anti-Discrimination Committee*,
   ("AADC"), 525 U.S. 471 (1999) ..................................................... 11, 13

*Richard K. v. United Behavioral Health*,
   No. 18-cv-6318 (GHW)(BCM), 2019 WL 3083019 (S.D.N.Y. June 28, 2019) .................... 23

*Rivas-Melendez v. Napolitano*,
   689 F.3d 732 (7th Cir. 2012) ................................................................. 16

*Ru Jun Zhang v. Lynch*,
    No. 16-cv-4889, 2018 WL 1157756 (E.D.N.Y. Mar. 1, 2018) .......................................... 10

*Ruiz v. Mukasey*,
    552 F.3d 269 (2d Cir. 2009) ........................................................................................ 14

*Rumsfeld v. Padilla*,
    542 U.S. 426 (2004) ............................................................................................. 17, 18

*Samuels v. Air Transp. Local 504*,
    992 F.2d 12 (2d Cir. 1993) ........................................................................................ 10

*Silva v. United States*,
    866 F.3d 938 (8th Cir. 2017) ..................................................................................... 11

*Singh v. Napolitano*,
    500 F. App'x 50 (2d Cir. 2012) .................................................................................. 11

*Spinale v. U.S. Dep't Agric.*,
    621 F. Supp. 2d 112 (S.D.N.Y. 2009) ....................................................................... 24

*Thompson v. Choinski*,
    525 F.3d 205 (2d Cir. 2008) ...................................................................................... 25

*Troy as Next Friend Zhang v. Barr*,
    822 F. App'x 38 (2d Cir. 2020) ................................................................................. 25

*Trump v. Hawaii*,
    138 S. Ct. 2392 (2018) ............................................................................................... 21

*Trump v. J. G. G.*,
    604 U.S. ---, 2025 WL 1024097 (Apr. 7, 2025) .................................................... 17, 18

*United States ex rel. Knauff v. Shaughnessy*,
    338 U.S. 537 (1950) ................................................................................................... 21

*United States v. Martinez-Rojas*,
    No. 15-cr-348, 2023 WL 4867433 (E.D.N.Y. July 31, 2023) ................................. 18, 19

*United States v. Nordic Village, Inc.*,
    503 U.S. 30 (1992) ..................................................................................................... 24

*Vidhja v. Whitaker*,
    No. 19-cv-613 (PGG), 2019 WL 1090369 (S.D.N.Y. Mar. 6, 2019) ......................... 11

*Wal-Mart Stores, Inc. v Dukes*,
    564 U.S. 338 ............................................................................................................... 24

*Yearwood v. Barr*,
   391 F. Supp. 3d 255 (S.D.N.Y. 2019)................................................12, 15, 17

*Zivotofsky v. Kerry*,
   576 U.S. 1 (2015)........................................................................20

**Statutes**

8 U.S.C. § 1182(d)(5)(A)....................................................................22

8 U.S.C. § 1231...........................................................................9, 12

8 U.S.C. § 1231(b)(2)........................................................................15

8 U.S.C. § 1231(b)(2)(A)......................................................................3

8 U.S.C. § 1231(b)(3)(A)......................................................................4

8 U.S.C. § 1252(g)........................................................................1, 10

8 U.S.C. § 1182...........................................................................2, 22

8 U.S.C. § 1252(a)(5)..................................................................passim

8 U.S.C. § 1252(b)(9)........................................................................13

8 U.S.C § 1226(a)...........................................................................7

28 U.S.C. § 2241.......................................................................passim

28 U.S.C. § 1346(b).........................................................................26

28 U.S.C. § 2401(b).........................................................................26

42 U.S.C. § 1983.........................................................................2, 24

**Rules**

Fed. R. Civ. P. 12(b)(1)......................................................................9

Fed. R. Civ. P. 12(b)(6)...................................................................9, 10

Fed. R. Civ. P. 23(b)(2).................................................................23, 24

**Regulations**

8 C.F.R. § 208.16(a).........................................................................4

8 C.F.R. § 208.16(b)...................................................................................................4

8 C.F.R. § 208.16(c)...................................................................................................4

8 C.F.R. § 241.1......................................................................................................12

8 C.F.R. § 241.15...............................................................................................9, 12

8 C.F.R. § 1236.........................................................................................................7

8 C.F.R. § 1240.11(c).................................................................................................3

## PRELIMINARY STATEMENT

Defendants the United States Department of Homeland Security ("DHS") and Kristi Noem, in her official capacity as Secretary of DHS (collectively, "Respondents"), by their attorney, John J. Durham, United States Attorney for the Eastern District of New York, Philip R. DePaul, Assistant United States Attorney, of counsel, respectfully submit this memorandum of law in response to the Court's Order to Show Cause ("OTSC") dated April 3, 2025, directing this Office to "show cause . . . why a writ of habeas corpus should not be issued." *See* ECF OTSC dated Apr. 3, 2024.

Petitioner *pro se* Gloria Browning Vaamondes Barrios ("Browning") brings this action as next friend of her putative husband, Petitioner Miguel Vaamondes Barrios ("Barrios") (collectively, "Petitioners"). In light of Petitioners' *pro se* status, and broadly construing Petitioners' pleading, this Office understands Petitioners to be seeking writ of habeas corpus pursuant to 28 U.S.C. § 2241 for Barrios. *See* ECF No. 1 ("Petition"). Petitioners allege that Barrios "had a removal order to his home country of Venezuela," but that, on March 15, 2025, Barrios was removed from the United States to El Salvador. *See id.* at § III (Statement of Claim). As for relief, Petitioners request that this Court order that Barrios "be removed" from El Salvador to Venezuela. *Id.* at § IV (Relief).

The Petition should be denied for multiple reasons. First, at least three provisions of the Immigration and Nationality Act ("INA") deprive this Court of jurisdiction over the Petition. Specifically, 8 U.S.C. § 1252(g) strips federal courts of jurisdiction over "any cause or claim" arising from the execution of removal orders, which is exactly what the Petition challenges. Also, this Court lacks jurisdiction under 8 U.S.C. §§ 1252(a)(5) and (b)(9) because those provisions channel all challenges to immigration proceedings and removal orders, like this one, to the courts

of appeals, and not the district courts. Each of those sections make clear that they provide the exclusive means of review (if any) "notwithstanding any other provision of law" including "habeas corpus." 8 U.S.C. §§ 1252(a)(5), (b)(9), (g).

Second, the Court lacks habeas jurisdiction under 28 U.S.C. § 2241 because Barrios, having been removed from the United States to a foreign sovereign, is not "in custody" for purposes of § 2241 jurisdiction. Third, even if § 2241 jurisdiction does exist, venue in this District is improper, because Barrios is not presently—and, indeed, has never been—in Immigration and Customs Enforcement ("ICE") detention in this District. Fourth, this Court cannot order the specific relief that Petitioners seek here, namely, a directive that one foreign sovereign (El Salvador) release Barrios, and another directive, to another foreign sovereign (Venezuela) to admit Barrios. Fifth, alternatively, this action should be dismissed or, at the very least, stayed pending resolution of class action pending in the United States District Court for the District of Massachusetts, because Barrios is a member of the certified class in that action. Sixth, to the extent Petitioners assert claims under 42 U.S.C. § 1983, any § 1983 claims would be barred by sovereign immunity. Finally, to the extent Petitioners seek monetary damages, the Court should not construe the Petition to assert claims for monetary damages, which would be subject to dismissal in any event.

## STATUTORY AND REGULATORY FRAMEWORK

### A. Removal Proceedings

Under the INA, several classes of aliens are "inadmissible" and therefore "removable." *See* 8 U.S.C. §§ 1182, 1229a(e)(2)(A). These include aliens that lack a valid entry document "at the time of application for admission," § 1182(a)(7)(A)(i)(I), when they arrive at a "port of entry," or when they are found present in the United States, §§ 1225(a)(1), (3). If an alien is inadmissible,

the alien is subject to removal from the United States. In removal proceedings pursuant to § 1229a, an alien may attempt to show that he or she should not be removed. Among other things, an eligible alien may apply for asylum on the ground that he or she would be persecuted on a statutorily protected ground if removed to a particular country. *Id.* §§ 1158, 1229a(b)(4); 8 C.F.R. § 1240.11(c).

Among other ways, an order of removal is also considered final if an alien waives appeal. *See id.* § 1101(a)(47)(B). Once an order of removal is final, an alien can be removed from the United States. *See id.* § 1231(a)(1)(A)-(B).

**B. Third Country Removals**

Aliens subject to removal orders need not be removed to their native country. Generally, as relevant here, aliens ordered removed "may designate one country to which the alien wants to be removed," and DHS "shall remove the alien to [that] country[.]" 8 U.S.C. § 1231(b)(2)(A). In certain circumstances, however, DHS need not remove the alien to their designated country, including where "the government of the country is not willing to accept the alien into the country." *Id.* § 1231(b)(2)(C)(iii). In such a case, the alien "shall" be removed to the alien's country of nationality or citizenship, unless that country "is not willing to accept the alien[.]" *Id.* § 1231(b)(2)(D). If an alien cannot be removed to the country of designation, or the country of nationality or citizenship, then the Government may consider other options, including "[t]he country from which the alien was admitted to the United States," "[t]he country in which the alien was born," or "[t]he country in which the alien last resided[.]" *Id.* §§ 1231(b)(2)(E)(i), (iii)-(iv).

Where removal to any of the countries listed in subparagraph (E) is "impracticable, inadvisable, or impossible," then the alien may be removed to any "country whose government will accept the alien into that country." *Id.* § 1231(b)(2)(E)(vii); *see Jama v. Immigr. & Customs*

*Enf't*, 543 U.S. 335, 341 (2005). In addition, DHS "may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion," 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. §§ 208.16(a)-(b), 1208.16(a)-(b), or if it is more likely than not that the alien would be tortured, 8 C.F.R. §§ 208.16(c), 208.17, 1208.16(c), 1208.17. The United States has accordingly ensured that an alien removed to El Salvador will not be tortured, and the United States would not have removed any alien to El Salvador for detention if doing so would violate its obligations under the Convention Against Torture. "The Judiciary is not suited to second-guess such determinations" about "whether there is a serious prospect of torture at the hands of" a foreign sovereign. *Munaf v. Geren*, 553 U.S. 674, 702 (2008); *see Kiyemba v. Obama*, 561 F.3d 509, 514 (D.C. Cir. 2009) ("Under *Munaf*, . . . the district court may not question the Government's determination that a potential recipient country is not likely to torture a detainee.").

## FACTUAL BACKGROUND

### A. Barrios' Entry Into The United States

Barrios is a native and citizen of Venezuela. *See* Declaration of Robert Hagan dated April 28, 2025 ("Hagan Decl.") ¶ 4; *see also* Declaration of Jessica Ann Harrold dated April 23, 2025 ("Harold Decl."), at Exhibit A, ECF No. 8-1, at 2-5.[1] Barrios entered the United States illegally on an unknown date, at an unknown location, without being admitted or paroled by an immigration officer. *Id.*

### B. Barrios' Criminal History

After Barrios' entry into the United States, he accumulated a significant, multistate

---

[1] Citations to the exhibits to the Harrold Declaration are to the ECF pagination.

criminal record, as follows:

- On April 20, 2023, Barrios was arrested in Paramus, New Jersey, for Shoplifting in violation of N.J. Rev. Stat. § 2C:20-11B(2). *See* Hagan Decl., ¶ 5; Harrold Decl., Exhibit B, ECF No. 8-2, at 86; Exhibit C, ECF No. 8-3, at 102.

- On June 17, 2023, Barrios was arrested in Paramus, New Jersey, for Shoplifting in violation of N.J. Rev. Stat. § 2C:20-11B(2). *See* Hagan Decl., ¶ 6; Harrold Decl., Exhibit B, ECF No. 8-2, at 86; Exhibit C, ECF No. 8-3, at 102.

- On July 20, 2023, Barrios was arrested in Nassau County, New York, for Grand Larceny in the Third Degree pursuant to N.Y. Pen. Law § 155.35. This arrest resulted in a conviction, by guilty plea, for Petit Larceny pursuant to N.Y. Pen. Law § 155.25 on October 27, 2023. *See* Hagan Decl., ¶ 7; Harrold Decl., Exhibit B, ECF No. 8-2, at 86; Exhibit C, ECF No. 8-3, at 102.

- On October 6, 2023, Barrios was arrested in Lower Merion Township, Pennsylvania, for Retail Theft and Receiving Stolen Property pursuant to 18 Pa. Cons. Stat. §§ 3929(a)(1); 3925. *See* Hagan Decl., ¶ 8; Harrold Decl., Exhibit B, ECF No. 8-2, at 86; Exhibit C, ECF No. 8-3, at 102.

- On December 29, 2023, Barrios was arrested in Queens County, New York, and charged with Menacing in the Second Degree, Criminal Mischief, Criminal Possession of a Weapon in the Fourth Degree and Harassment in the Second Degree pursuant to N.Y. Pen. Law §§ 120.14, 145.00, 265.01, and 240.26. *See* Hagan Decl., ¶ 9; Harrold Decl., Exhibit B, ECF No. 8-2, at 86; Exhibit C, ECF No. 8-3, at 102.

- On or about January 31, 2024, Barrios was arrested in Queens County, New York, and charged with Criminal Contempt in the Second Degree and Criminal Mischief

pursuant to N.Y. Penal Law §§ 145.00 and 215.50. *See* Hagan Decl., ¶ 10; Harrold Decl., Exhibit B, ECF No. 8-2, at 86; Exhibit C, ECF No. 8-3, at 102.

- On or about February 1, 2024, Barrios was arrested in Queens County, New York and charged with Criminal Contempt in the Second Degree pursuant to N.Y. Penal Law § 215.50. *See* Hagan Decl., ¶ 11; Harrold Decl., Exhibit B, ECF No. 8-2, at 86; Exhibit C, ECF No. 8-3, at 102.

- On March 27, 2024, Barrios was arrested in Bronx County, New York, and charged with two counts of Criminal Possession of a Controlled Substance in the Third Degree, two counts of Criminal Possession of a Weapon in the Second Degree – Loaded Firearm, Criminal Possession of a Narcotic Drug in the Fourth Degree, four counts of Criminal Possession of a Weapon in the Third Degree, Criminal Possession of a Controlled Substance in the Fifth Degree – Intent to Sell, two counts of Criminal Possession of a Firearm, two counts of Criminal Possession of a Weapon in the Fourth Degree, and Criminal Possession of a Controlled Substance in the Seventh Degree pursuant to N.Y. Pen. Law §§ 220.16(1), 220.16(12), 265.03, 220.09, 265.02(8), 265.02(1), 220.06, 265.01-B, 265.01 and 220.03. *See* Hagan Decl., ¶ 12; Harrold Decl., Exhibit B, ECF No. 8-2, at 86; Exhibit C, ECF No. 8-3, at 102.

**C. ICE Encounters Barrios And He Is Detained Outside Of This District**

On May 15, 2024, ICE Enforcement and Removal Operations ("ERO") encountered Barrios while he was detained at the Montgomery County Correctional Facility in Montgomery County, Pennsylvania. Hagan Decl., ¶ 13; Harrold Decl., Exhibit B, ECF No. 8-2, at 84-86. Barrios was detained at that facility, by local law enforcement, pursuant to an arrest warrant issued on February 9, 2024, by the Montgomery County Court of Common Pleas in Montgomery County,

Pennsylvania, under docket number CP-46-CR-6354-2023. Hagan Decl., ¶ 13; Harrold Decl., Exhibit B, ECF No. 8-2, at 84-86.

ERO then arrested Barrios and served him with a Notice to Appear. Hagan Decl., ¶¶ 15-16; Harrold Decl., Exhibit A, ECF No. 8-1, at 2-5. The Notice to Appear charged Barrios as being inadmissible under the INA as an alien present in the United States without having been admitted or paroled. *See* Hagan Decl., ¶ 15; Harrold Decl., Exhibit A, ECF No. 8-1, at 2-5. *See also* 8 U.S.C. § 1182(a)(6)(A)(i). Barrios was placed into removal proceedings and was thereafter detained by ICE pursuant to 8 U.S.C § 1226(a), INA § 236(a). Hagan Decl. ¶ 15; Harrold Decl., Exhibit A, ECF No. 8-1, at 2-5.

With the exception of a transfer, for a period of two days, to local law enforcement in New York for a criminal court appearance in Bronx County Supreme Court, *see* Hagan Decl. ¶ 16; Harrold Decl., Exhibit C, ECF No. 8-3, at 103, Barrios was in ICE custody from May 15, 2024 until his removal on March 15, 2025. *See* Hagan Decl., ¶¶ 16-19. Barrios was first detained by ICE in Pennsylvania. *See* Hagan Decl., ¶ 17. Barrios was next detained by ICE in Texas. *See* Hagan Decl., ¶ 18. Importantly, throughout his entire ICE detention, Barrios was never in ICE custody within the Eastern District of New York. *See* Hagan Decl., ¶ 19.

### D. Barrios' Removal Proceedings

After Barrios was served with the Notice to Appear, he sought bond on three occasions pursuant to 8 C.F.R. § 1236, all of which were unsuccessful. Barrios first sought bond on May 16, 2024, which was withdrawn on May 30, 2024. *See* Hagan Decl., ¶ 21; Harrold Decl., Exhibit A, ECF No. 8-1, at 9-10. Barrios next sought bond on October 16, 2024, which was also withdrawn, on October 23, 2024. *See* Hagan Decl., ¶ 21; Harrold Decl., Exhibit B, ECF No. 8-2, at 2-80, 191-192. Barrios last sought bond on November 7, 2024, which was denied by the IJ, on November

13, 2024, because Barrios had "not met [his] burden to prove [he was] not a danger to the community." *See* Hagan Decl., ¶ 22; Harrold Decl., Exhibit C, ECF No. 8-3, at 2-129, 130-131; *see also* Declaration of Philip R. DePaul dated April 29, 2025 ("DePaul Decl."), at Exhibit G, ECF No. 11-7, at 2-9.[2]

On November 22, 2024, Barrios and ICE filed a Joint Motion for Stipulated Removal, in which Barrios, by counsel, "admit[ted] all factual allegations in the Notice to Appear and admit[ted] inadmissibility as charged." *See* Hagan Decl., ¶ 23; Harrold Decl., Exhibit C, ECF No. 8-4, at 270-275. In the joint motion, Barrios designated Venezuela as the county of removal under 8 U.S.C. § 1231(b)(2)(A)(i), INA § 241(b)(2)(A)(i). *See* Hagan Decl., ¶ 23; Harrold Decl., Exhibit C, ECF No. 8-4, at 270-275. However, Barrios, by counsel, stated that he understood "the consequences of this request, ha[d] been advised by his undersigned counsel of the consequences of this request, and enter[ed] this request voluntarily, knowingly, and intelligently." *See* Hagan Decl., ¶ 24; Harrold Decl., Exhibit C, ECF No. 8-4, at 270-275. Barrios also stated that he "accept[ed] the removal order as final and waive[d] appeal of the removal order." *See* Hagan Decl., ¶ 24; Harrold Decl., Exhibit C, ECF No. 8-4, at 270-275.

On December 2, 2024, the IJ denied the Joint Motion for Stipulated Removal because it was "not signed by" Barrios. *See* Hagan Decl., ¶ 25; Harrold Decl., Exhibit C, ECF No. 8-4, at 278-279; *see also* DePaul Decl., Exhibit H, ECF No. 11-8, at 2-6. Nevertheless, by Order of the same date, the IJ ordered Barrios removed to Venezuela. *See* Hagan Decl., ¶ 26; Harrold Decl., Exhibit C, ECF No. 8-4, at 280-283; *see also* DePaul Decl., Exhibit H, ECF No. 11-8, at 2-6. As both parties had waived appeal, the removal order became administratively final on the same date, December 2, 2024. *See* Hagan Decl., ¶ 27; Harrold Decl., Exhibit C, ECF No. 8-4, at 280-283.

---

[2] Citations to the exhibits to the DePaul Declaration are to the ECF pagination.

Thus, at that point, Barrios was subject to an administratively final order of removal, and his detention and removal were authorized pursuant to 8 U.S.C. § 1231, INA § 241. *See* Hagan Decl., ¶ 28.

In early March 2025, no direct removals to Venezuela could occur because Venezuela was not accepting ICE Air removal flights of Venezuelan aliens at that time. *See* Hagan Decl., ¶ 29. As the government of El Salvador agreed to accept Barrios, pursuant to 8 U.S.C. § 1231 and 8 C.F.R. § 241.15, on March 15, 2025, Barrios was removed from the United States to El Salvador. *See* Hagan Decl., ¶ 30.

<b>STANDARD OF REVIEW</b>

**I.      Legal Standards Governing Motions Pursuant to Fed. R. Civ. P. 12(b)(1)**

A claim is properly dismissed under Federal Rule of Civil Procedure 12(b)(1) where there is a "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1); *Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80 (2d Cir. 2013) (*per curiam*) (holding that dismissal under Rule 12(b)(1) "is proper when the district court lacks the statutory or constitutional power to adjudicate" the case (citations omitted)). The plaintiff bears the "burden of proving" subject-matter jurisdiction by a "preponderance of the evidence." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). On a Rule 12(b)(1) motion, the Court may refer to "evidence outside the pleadings," such as documents or affidavits, without converting the motion to one for summary judgment. *See id.*

**II.     Legal Standards Governing Motions Pursuant to Fed. R. Civ. P. 12(b)(6)**

A complaint is properly dismissed under Federal Rule of Civil Procedure 12(b)(6) when it "fail[s] to state a claim upon which relief can be granted." Fed R. Civ. P. 12(b)(6). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007)).  A complaint offering "'naked assertion[s]' devoid of 'further factual enhancement,'" "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557).  On a Rule 12(b)(6) motion, the Court should consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993).

On a Rule 12(b)(6) motion, "the court may consider, in addition to the factual allegations of the complaint, documents attached to the complaint as exhibits or incorporated in it by reference, matters of which the court may take judicial notice, and documents in the plaintiff's possession or of which she had knowledge and relied on in bringing suit." *Ru Jun Zhang v. Lynch*, No. 16-cv-4889, 2018 WL 1157756, at *4 (E.D.N.Y. Mar. 1, 2018) (Kuntz, J.). Further, "'[w]here . . . exhaustion of administrative remedies is a prerequisite to bringing suit, a court may take judicial notice of the records and reports of the relevant administrative bodies, as well as the facts set forth therein.'" *Moreau v. Peterson*, No. 12-cv-201 (NSR), 2015 WL 4272024, at *3 (S.D.N.Y. July 13, 2015), *aff'd*, 672 F. App'x 119 (2d Cir. 2017); *Akran v. United States*, 997 F. Supp. 2d 197, 204 n.5 (E.D.N.Y. 2014) (Vitaliano, J.) (taking judicial notice over plaintiff's objection), *aff'd* 581 Fed. App'x 46 (2d Cir. 2014).

## ARGUMENT

## I.    THIS COURT LACKS JURISDICTION

### A.  8 U.S.C. § 1252(g) Bars Review Of Challenges To The Execution Of Removal Orders

Barrios' habeas petition challenges his removal to El Salvador rather than Venezuela. Since Barrios challenges the execution of his removal order, this Court lacks jurisdiction under 8 U.S.C. § 1252(g).

Section 1252(g) bars claims arising from the three discrete actions identified in § 1252(g), including, as relevant here, the decision or action to "execute removal orders." *Id.* In enacting § 1252(g), Congress spoke clearly, emphatically, and repeatedly, providing that "no court" has jurisdiction over "any cause or claim" arising from the execution of removal orders, "notwithstanding any other provision of law," whether "statutory or nonstatutory," including habeas, mandamus, or the All Writs Act. *Id.* Accordingly, by its terms, this jurisdiction-stripping provision precludes habeas review under 28 U.S.C. § 2241 of claims arising from a decision or action to "execute" a final order of removal. *See Reno v. American-Arab Anti-Discrimination Committee* ("*AADC*"), 525 U.S. 471, 482 (1999). *See also Singh v. Napolitano*, 500 F. App'x 50, 52 (2d Cir. 2012) (holding that attempt to "employ[] a habeas petition effectively to challenge the validity and execution of [a] removal order," even "indirectly," is "jurisdictionally barred").

In *AADC*, the Supreme Court's considered the reach of § 1252(g). 525 U.S. at 482. The Court explained that with respect to the "three discrete actions" identified in the text of § 1252(g)—commencement of proceedings, adjudication of cases, and execution of removal orders—§ 1252(g) strips district courts of jurisdiction. *AADC*, 525 U.S. at 482. Those actions, the Supreme Court observed, are committed to the discretion of the Executive Branch, and § 1252(g) was designed to protect that discretion and avoid the "deconstruction, fragmentation, and hence prolongation of removal proceedings." *AADC*, 525 U.S. at 487. Thus, by its plain terms, § 1252(g) bars Barrios' claims. *AADC*, 525 U.S. at 487; *accord Silva v. United States*, 866 F.3d 938, 940-41 (8th Cir. 2017) (§ 1252(g) applies to constitutional claims arising from the execution of a final order of removal, and language barring "*any* cause or claim" made it "unnecessary for Congress to enumerate every possible cause or claim"); *Vidhja v. Whitaker*, No. 19-cv-613 (PGG), 2019 WL 1090369, at *3 (S.D.N.Y. Mar. 6, 2019) (concluding that § 1252(g) deprived the court of

jurisdiction to grant the petitioner a stay of removal pending resolution of his motion to reopen.)

Indeed, courts have understood the § 1252(g) jurisdictional bar to apply even after an alien's removal, in circumstances where an alien seeks to return to the United States to pursue further immigration relief. *See Alomaisi v. Decker*, No. 20-cv-5059 (VSB) (SLC), 2021 WL 611047, at *8 (S.D.N.Y. Jan. 27, 2021) (finding jurisdiction lacking under, *inter alia*, § 1252(g), where Plaintiff filed a habeas petition seeking an order returning him to the United States from Yemen to pursue a motion to reopen that was pending at the time the petition was filed), *report and recommendation adopted Alomaisi v. Decker*, 2021 WL 3774117 (S.D.N.Y. Aug. 25, 2021); *Yearwood v. Barr*, 391 F. Supp. 3d 255, 263 (S.D.N.Y. 2019) (dismissing for lack of jurisdiction, including under § 1252(g), habeas corpus petition seeking alien's return to the United States despite ICE's previous agreement that petitioner could stay in the United States for medical treatment).

In this case, Barrios does not dispute that he was subject to a valid administratively final removal order, albeit one which directed his removal to Venezuela and not El Salvador. *See* Hagan Decl., ¶ 28; Harrold Decl., Exhibit C, ECF No. 8-4, at 280-283. At the time of Barrios' removal, however, Venezuela was not accepting ICE Air removal flights. *See* Hagan Decl., ¶ 29. As the government of El Salvador agreed to accept Barrios, pursuant to 8 U.S.C. § 1231 and 8 C.F.R. § 241.15, on March 15, 2025, Barrios was removed from the United States to El Salvador. *See* Hagan Decl., ¶ 30. Under the INA, removal is authorized to a "[a] country with a government that will accept the alien into that country" if it would be "impracticable, inadvisable, or impossible" to remove the alien to designated country of removal or other enumerated countries. 8 U.S.C. § 1231(b)(2)(E)(vii). *See also* 8 C.F.R. § 241.1. Thus, because Barrios' challenge is to the execution of a final removal order, i.e., executing his removal to El Salvador instead of Venezuela, this action

is barred by the plain terms of § 1252(g). Accordingly, this Court lacks jurisdiction.

**B.  8 U.S.C. §§ 1252(a)(5) And (b)(9) Channel All Challenges To Removal Orders And Removal Proceedings To The Courts Of Appeals**

Even if § 1252(g) of the INA did not bar review—which it does—§§ 1252(a)(5) and 1252(b)(9) of the INA bar review in *this* Court.  By law, "the sole and exclusive means for judicial review of an order of removal" is a "petition for review filed with an appropriate court of appeals," that is, "the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." 8 U.S.C. §§ 1252(a)(5), (b)(2). This explicitly excludes "section 2241 of title 28, or any other *habeas corpus* provision." 8 U.S.C. § 1252(a)(5) (emphasis added). Section 1252(b)(9) then eliminates this Court's jurisdiction over Barrios' claims by channeling "all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien" to the courts of appeals.  Again, the law is clear that "no court shall have jurisdiction, by *habeas corpus*" or other means. § 1252(b)(9) (emphasis added). Section 1252(b)(9) is an "unmistakable 'zipper' clause" that "channels judicial review of *all* [claims arising from deportation proceedings]" to a court of appeals in the first instance. *AADC*, 525 U.S. at 483.  "Taken together, §[§] 1252(a)(5) and [(b)(9)] mean that *any* issue— whether legal or factual—arising from *any* removal-related activity can be reviewed *only* through the [petition for review] process." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016); *see id.* at 1035 ("§§ 1252(a)(5) and [(b)(9)] channel review of all claims, including policies-and- practices challenges . . . whenever they 'arise from' removal proceedings").

Here, Barrios' claims are barred under §§ 1252(a)(5) and (b)(9) because they "aris[e] from . . . proceeding[s] brought to remove . . . an alien from the United States" and likewise challenge an "*action taken* . . to remove an alien from the United States." 8 U.S.C. § 1252(b)(9) (emphasis added). Rather than petition the relevant court of appeals, Barrios chose to file a habeas

petition in this Court to challenge his removal. That is precisely what the INA forbids. *See J.E.F.M.*, 837 F.3d at 1031.

In evaluating the reach of these provisions, the Second Circuit has held that where a litigant seeks to challenge a removal order—even indirectly—district courts do not have jurisdiction. *Delgado v. Quarantillo*, 643 F.3d 52 (2d Cir. 2011); *see also Ruiz v. Mukasey*, 552 F.3d 269, 274 n.3 (2d Cir. 2009) (only when the action is "unrelated to any removal action or proceeding" is it within the district court's jurisdiction). In *Delgado*, the Second Circuit explained that "whether the district court has jurisdiction will turn on the substance of the relief that a plaintiff is seeking." *Id*. at 55. The Second Circuit held that the REAL ID Act of 2005 divests district courts of jurisdiction to review even indirect challenges to removal orders. *Id*. The alien in *Delgado* brought a mandamus petition to compel USCIS to adjudicate her Form I-212 application, which sought permission to reapply for admission after deportation. *Id*. at 54. The court employed a "substance of relief test" and determined that even though USCIS's grant of an I-212 waiver would not "per se prevent her removal," such a waiver was "a necessary prerequisite to her ultimate goal of adjustment of status." *Id*. at 55. The court reasoned that the I-212 waiver was "inextricably linked" to Delgado's removal order because a grant of adjustment of status would invalidate Delgado's order of removal. *Id*. Accordingly, the court held that the mandamus petition was barred by the REAL ID Act. *Id*.

Applying *Delgado*'s "substance of relief test," Barrios seeks relief that amounts to an impermissible direct, or at least indirect, challenge to his final removal order, over which this Court lacks jurisdiction. Barrios effectively seeks to "undo" his removal and explicitly seeks an order directing the United States to redirect his removal from El Salvador to Venezuela. *See* Petition, at IV (Relief). Courts in this Circuit have applied *Delgado* to preclude the exercise of jurisdiction in

14

cases where aliens have moved to stay their removal, as well as where an alien sought relief *after* removal. *See Alomaisi,* 2021 WL 611047, at *7 (recognizing that § 1252(a)(5) barred review where removed alien sough return to the United States to further pursue immigration relief); *Yearwood*, 391 F. Supp. 3d at 263 (applying *Delgado* to find that where removed petitioner sought an order requiring the government to return him to the United States, such relief was a "a direct challenge to the order of removal, *regardless of the fact that the petitioner frames his claim as a challenge to the process through which he was removed*.") (emphasis added). *See also Noor v. Homan*, No. 17-cv-1558, 2018 WL 1313233, at *3-4 (E.D.N.Y. Feb. 27, 2018) (Kuntz, J.) ("District courts in this Circuit have dismissed as barred by § 1252(a)(5) a wide range of claims that were held to constitute challenges to removal orders, including requests for stays of removal and adjustments of status."); *Akhuemokhan v. Holder*, No 12-cv-1181, 2013 WL 6913170, at *2 (E.D.N.Y. Dec. 30, 2013) (Bianco, J.) ("[T]o the extent petitioner challenges his removal and is seeking a stay of, or any other relief from, his order of removal, this Court lacks jurisdiction to grant such relief, and these claims are dimissed.") Accordingly, this Court likewise lacks jurisdiction under §§ 1252(a)(5) and (b)(9).[3]

## C. There Is No Habeas Jurisdiction Because Barrios Is Not In Custody

This Court also lacks jurisdiction over Barrios' habeas claims because he is not "in custody" of the United States. "A petitioner must be 'in custody' in order to invoke habeas jurisdiction of the federal courts." *Ogunwomoju v. United States*, 512 F.3d 69, 73 (2d Cir. 2008).

---

[3] The Supreme Court's recent order in *Noem v. Abrego Garcia*, 604 U.S. ---, 2025 WL 1077101 (Apr. 10, 2025), which did not address the INA's jurisdiction stripping provisions, is distinguishable. Indeed, there, the plaintiff, while under a final order of removal, had been granted withholding of removal to El Salvador. *Id.* at *1. He was nonetheless removed to El Salvador. *Id.* Here, on the other hand, Barrios was not granted withholding of removal. *See* Hagan Decl. ¶¶ 26-28. Instead, Barrios was under a final order of removal to Venezuela. *Id.* Because, however, Venezuela was not accepting ICE Air removal flights, Barrios was removed to a third country, El Salvador, pursuant to 8 U.S.C. § 1231(b)(2). *See* Hagan Decl. ¶¶ 29-30.

Barrios fails this threshold requirement.

"Congress has granted federal district courts, 'within their respective jurisdictions,' the authority to hear applications for habeas corpus by any person who claims to be held 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Rasul v. Bush*, 542 U.S. 466, 473 (2004) (quoting 28 U.S.C. §§ 2241(a), (c)(3)). The "in custody" requirement is jurisdictional and must be satisfied. *See Maleng v. Cook*, 490 U.S. 488, 490-91 (1989). "The custody requirement of the habeas corpus statute is designed to preserve the writ of habeas corpus as a remedy for severe restraints on individual liberty." *Hensley v. Mun. Ct. San Jose Milpitas Judicial Dist.*, 411 U.S. 345, 351 (1973). The "in custody" analysis generally hinges on whether "a petitioner has suffered substantial restraints not shared by the public generally." *Lehman v. Lycoming Cty. Children's Servs. Agency*, 458 U.S. 502, 510 (1982); *see also Jones v. Cunningham*, 371 U.S. 236, 240 (1963).

Barrios does not satisfy the "in custody" requirement. It is undisputed that Barrios is not being detained by the United States Government. *Cf. Johnson v. Eisentrager*, 339 U.S. 763, 784 (1950). Petitioners, instead, apparently rely on the fact that Barrios has been removed from the United States. *See generally* Petition. But this fact does not place him "in custody" for habeas purposes. Indeed, courts have routinely concluded that aliens who have already been removed prior to filing habeas petitions do not satisfy the "in custody" requirement.[4] District courts in this

---

[4] *See Rivas-Melendez v. Napolitano*, 689 F.3d 732, 738-39 (7th Cir. 2012) (petitioner was not "in custody" where he had been physically removed prior to filing his petition); *Merlan v. Holder*, 667 F.3d 538 (5th Cir. 2011) (same); *Kumarasamy v. Attorney General*, 453 F.3d 169, 172-73 (3d Cir. 2006) (same); *Patel v. U.S. Attorney General*, 334 F.3d 1259, 1263 (11th Cir. 2003) (declining to transfer action to district court where alien had already been removed and thus failed to satisfy the "in custody" requirement for habeas); *Miranda v. Reno*, 238 F.3d 1156, 1158-59 (9th Cir. 2001) (petitioner not "in custody" for habeas purposes where he had been removed prior to filing his petition).

Circuit have held the same.[5] As these courts have explained, "[a] petitioner who has been removed from the country is 'not subject to restraints not shared by the public generally that significantly confine and restrain his freedom. [He] is subject to no greater restraint than any other non-citizen living outside American borders.'" *Kumarasamy*, 453 F.3d at 173 (quoting *Miranda*, 238 F.3d at 1159; and citing *Patel*, 334 F.3d at 1263.

Take *I.M. v. United States Customs & Border Prot.*, where the D.C. Circuit held that courts lack jurisdiction to hear habeas petitions after the petitioners had already been removed. 67 F.4th 436, 444 (D.C. Cir. 2023). The petitioner there argued for constructive custody because "extreme circumstances" prevented him from seeking habeas prior to his removal. *Id.* The court held that this was no basis to discard habeas' traditional custody requirement. *Id.* The same is true here. Whatever circumstance prevented Barrios from filing a habeas petition while he was in United States custody does not excuse this core jurisdictional requirement. Nor does it permit courts to manufacture constructive custody. *Id.* This Court should therefore dismiss the Petition.[6]

### D. Even if Barrios Was In Custody, The Court Lacks Jurisdiction Because He Is Not In Custody In This District

"For 'core habeas petitions,' 'jurisdiction lies in only one district: the district of confinement.'" *Trump v. J. G. G.*, 604 U.S. ---, 2025 WL 1024097, at *1 (Apr. 7, 2025) (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 437 (2004)) (vacating TRO where plaintiffs did not file habeas

---

[5] *See Alomaisi*, 2021 WL 611047, at *8 (finding that an alien who had been removed to Yemen before the filing of a habeas petition "cannot satisfy the 'in custody' requirement for habeas corpus); *Portillo v. Bharara*, No. 09-cr-1142 (RPP), 2012 WL 1648403, at *1 (S.D.N.Y. May 10, 2012) (dismissing, for lack of jurisdiction, habeas petition by "a non-citizen, detained in a foreign country, by a foreign government, pursuant to an extradition request by the United States.") *aff'd*, 527 F. App'x 48 (2d Cir. 2013). Accordingly, Barrios is not "in custody" for purposes of habeas jurisdiction. *See generally, Yearwood*, 391 F. Supp. 3d 255, 260 n.2 (S.D.N.Y. 2019) (recognizing that "jurisdiction for the purpose of habeas corpus is measured at the time that the petition is brought.").

[6] To the extent Browning seeks relief in her individual capacity, she also is not in custody to bring a 2241 habeas petition. And the Supreme Court's recent decision in *Muñoz v. Dep't of State*, 602 U.S. 899 (2024) casts doubt on Petitioner Browning's ability to assert these habeas claims on behalf of Barrios. *See id.* at 917 (rejecting a "claim to a procedural due process right in someone else's legal proceeding.")

petitions in correct district). So a habeas petition brought under 28 U.S.C. § 2241 challenging detention must be brought against the immediate custodian and filed in the district in which the petitioner is detained. Barrios is not, and has never been, in custody in the Eastern District of New York. Thus, the Court lacks jurisdiction over the habeas petition and the Court must dismiss this action.

The Supreme Court has made clear that in "core" habeas petitions—*i.e.*, petitions like this one that challenges the petitioner's physical confinement—the petitioner must file the petition in the district in which he is confined and name his warden as the respondent. *J. G. G.*, 604 U.S. ---, 2025 WL 1024097, at *1. Accordingly, "[w]henever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement." *Padilla*, 542 U.S. at 447; *see also id.* at 443 (explaining that "[t]he plain language of the habeas statute thus confirms the general rule that for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement").

This Court has adhered to this rule. *See Johnson v. Ramos*, No. 12-cv-1795, 2012 WL 1901265, at *1 (E.D.N.Y. May 22, 2012) (Vitaliano, J.) (recognizing that "only a court in the district of confinement has jurisdiction over a § 2241 petition" and dismissing petition for lack of jurisdiction.); *see also, e.g., McCoy v. United States*, No. 21-cr-276, 2025 WL 974641, at *2 (E.D.N.Y. Apr. 1, 2025) (Amon, J.) ("'The plain language'" of § 2241 "'confirms the general rule that for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement.'") (quoting *Padilla*, 542 U.S. at 443.); *United States v. Martinez-Rojas*, No. 15-cr-348, 2023 WL 4867433, at *3 (E.D.N.Y. July 31, 2023) (Korman, J.) ("I cannot consider defendant's motion if it is requested pursuant to 28 U.S.C. § 2241 because

18

the defendant is no longer incarcerated in this district.").

Here, it cannot be disputed that Barrios is not confined in this District—in fact, Barrios is not even confined in this country. *See* Hagan Decl., ¶ ("[O]n March 15, 2025, Barrios was removed from the United States to El Salvador"). Moreover, before Barrios was removed and was in ICE detention, he was detained in Pennsylvania and Texas. *See* Hagan Decl., ¶¶ 17-18. Critically, Barrios has never been in ICE custody in this District. *See* Hagan. Decl., ¶ 19 ("From the time Barrios entered ICE custody in May of 2024 until his removal in March of 2025, Barrios was *never* in ICE custody within the Eastern District of New York.") (emphasis added). Accordingly, jurisdiction over the Petition in this District is lacking and the Court must dismiss the Petition.

## II. THE COURT CANNOT ORDER THE TRANSFER OF BARRIOS FROM ONE FOREIGN SOVEREIGN TO ANOTHER FOREIGN SOVEREIGN

Aside from the jurisdictional impediments discussed above, this Court lacks the power grant Barrios the relief he seeks—namely, an order directing the government of El Salvador to remove him and for the government of Venezuela to admit him. Even an order directing the United States to request this remedy would represent an encroachment upon executive authority.

As an initial matter, it bears emphasizing that Petitioners are not seeking Barrios' return to the United States; instead, Petitioners request that this Court order that Barrios "be removed" from El Salvador to Venezuela. *See id.* at § IV (Relief). In other words, Petitioners are asking this Court to broker a deal between two foreign sovereigns—which is a clear-cut foreign relations matter outside the purview of the federal judiciary. *See generally Harisiades v. Shaughnessy*, 342 U.S. 580, 588–89 (1952) ("any policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations . . . . Such matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial

inquiry or interference."). Indeed, Barrios lacks standing for such sweeping relief, as the remedy is "too speculative" since it relies on the "the unfettered choices made by independent actors not before the court[ ]"—here the separate sovereigns of El Salvador and Venezuela. *Bernhardt v. Cnty. of Los Angeles*, 279 F.3d 862, 869–70 (9th Cir. 2002) (no standing because remedy relied on actions of third parties) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

And even if the remedy was just to request the transfer between nations (which by itself would not remedy any injury), this would still intrude on the President's Article II powers. After all, Article II "authorizes the Executive to engag[e] in direct diplomacy with foreign heads of state and their ministers," *Zivotofsky v. Kerry*, 576 U.S. 1, 14 (2015), which is why the Supreme Court has "taken care to avoid 'the danger of unwarranted judicial interference in the conduct of foreign policy,'" *Biden v. Texas*, 597 U.S. 785, 805 (2022). To even ask the Government to broker such a deal would significantly interfere with the President's core foreign affairs responsibilities.

But even if Petitioners were seeking an order directing the Government to return Barrios to the United States, that would also exceed the scope of this Court's power. This is because Barrios' removal was in accordance with the prerogatives of the legislative and executive branches—and to order him returned would undercut those prerogatives. Indeed, the Constitution vests the power to admit or exclude aliens "in the national government, to which the Constitution has committed the entire control of international relations, in peace as well as in war." *Nishimura Ekiu v. United States*, 142 U.S. 651, 659 (1892). That power belongs, in particular, to the political Branches. *Id.*; *see also Kleindienst v. Mandel*, 408 U.S. 753, 765-66 & n.6 (1972) (noting that "the Court's general reaffirmations" of the political Branches' exclusive authority to admit or exclude aliens "have been legion"); *see also Department of Homeland Security v. Thuraissigiam,* 591 U.S. 103, 139 ("[T]he Constitution gives the political department of the government plenary authority to

decide which aliens to admit; and a concomitant of that power is the power to set the procedures to be followed in determining whether an alien should be admitted." (internal citations and quotation marks omitted)). Control of the Nation's borders is vested in the political branches because that control is "vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government"—all matters "exclusively entrusted to the political branches of government." *Harisiades*, 342 U.S. at 588-89.

Consistent with those principles, the Supreme Court "without exception has sustained Congress' 'plenary power to make rules for the admission of aliens and to exclude those who possess those characteristics which Congress has forbidden.'" *Kleindienst*, 408 U.S. at 766 (quotation omitted). So too the Court has upheld the Executive's "inherent" power to administer the immigration laws. *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950). In that regard, the Court has held that admission to the United States "is a privilege granted by the sovereign United States Government," *id.*, and has repeatedly made clear that "it is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien." *Id.* at 543.

Given the above separation-of-powers principles, the courts have traditionally and consistently declined to redraw the lines that Congress has drawn to decide which aliens should be allowed into the United States. *See, e.g.*, *Plyler v. Doe*, 457 U.S. 202, 225 (1982) ("Congress has developed a complex scheme governing admission to our Nation and status within our borders. The obvious need for delicate policy judgments has counseled the Judicial Branch to avoid intrusion into this field."); *cf. Trump v. Hawaii*, 138 S. Ct. 2392, 2418 (2018) ("For more than a century, this Court has recognized that the admission and exclusion of foreign nationals is a

fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." (internal quotation marks and citation omitted)). A district court cannot direct Executive Branch officials to effectuate an alien's entry outside the scope contemplated by 8 U.S.C. § 1182. As noted above, the determination whether to parole an alien into the United States rests in the sole discretion of DHS and may be exercised only "for urgent humanitarian reasons or significant public benefit," 8 U.S.C. § 1182(d)(5)(A), and district courts may not direct any particular exercise of that discretion. Given this is the case with regard to admission, *a fortiori* a court cannot require the United States to negotiate a transfer of an alien's custody between two foreign countries.

ICE removed Barrios pursuant to his valid, final removal order. Hagan Decl., ¶¶ 27-30. Barrios was placed in removal proceedings before an immigration judge, was represented by counsel, conceded his removability, and waived appeal. *See* Hagan Decl., Exhibits A through D; DePaul Decl., Exhibits A through H. There is simply no basis, or jurisdiction, for this Court to grant the novel and extraordinary relief that Barrio seeks, namely, an order directing the Government of El Salvador to remove him, the government of Venezuela to admit him, or the United States Government to request either. Accordingly, independent of the other jurisdictional impediments, the Court should dismiss this action.

III. **THIS CASE SHOULD BE DISMISSED, OR, AT THE VERY LEAST, STAYED PENDING THE RESOLUTION OF A CLASS ACTION, OF WHICH BARRIOS IS A CLASS MEMBER, IN A DIFFERENT DISTRICT**

Notwithstanding the jurisdictional bars outlined above, Respondents alternatively respectfully submit that this action should be dismissed, or, at the very least, stayed pending resolution of class action currently pending in the United States District Court for the District of Massachusetts, *see D.V.D. v. DHS*, No. 12-cv-10767 (BEM) (D. Mass.)—where a class, which

includes Barrios, has already been certified. This Court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *Landis v. N. Am. Co.*, 299 U.S. 248 (1936); *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000) ("As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit.").

As part of district courts' discretion to administer their docket, courts have dismissed, without prejudice, or stayed suits brought by individuals whose claims are duplicative of class claims pending in other districts. [7] In fact, multiple courts of appeals have upheld dismissals of a case if there is a parallel class action raising the same or substantially similar issues. [8]

This Court should therefore dismiss, or stay, this action pending resolution of the claims in the *D.V.D.*, because Barrios is a member of the *D.V.D.* class. Indeed, on April 18, 2025, the court in *D.V.D.* certified, pursuant to Fed. R. Civ. P. 23(b)(2), a class of individuals defined as follows:

> All individuals who have a final removal order issued in proceedings under Section 240, 241(a)(5), or 238(b) of the INA (including withholding-only proceedings) whom DHS has deported or will deport on or after February 18, 2025, to a country (a) not previously designated as the country or alternative country of removal, and (b) not identified in writing in the prior proceedings as a country to which the

---

[7] *See Mackey v. Bd. of Educ. for Arlington Cent. Sch. Dist.*, 112 F. App'x 89, 91 (2d Cir. 2004) (affirming dismissal without prejudice "based on the rule against duplicative litigation" where plaintiff's allegations "duplicated claims that had been included in separate class actions" against the defendant, and plaintiffs "were members of those classes"); *Richard K. v. United Behavioral Health*, No. 18-cv-6318 (GHW)(BCM), 2019 WL 3083019, at *8 (S.D.N.Y. June 28, 2019) (staying action where plaintiffs' claims were duplicative of an earlier-filed class action in a different district that was certified but not concluded) *report and recommendation adopted* 2019 WL 3080849 (S.D.N.Y. July 15, 2019); *Hun v. Kashi Co.*, No. 15-cv-1391, 2015 WL 5117061, at *2 (E.D.N.Y. Aug. 31, 2015) (Glasser, J.) (staying action brought by plaintiffs who were themselves members of a nationwide class action pending settlement approval in a different district).

[8] *See, e.g., Crawford v. Bell*, 599 F.2d 890, 892–93 (9th Cir. 1979) (holding that a district court may dismiss "those portions of [the] complaint which duplicate the [class action's] allegations and prayer for relief"); *McNeil v. Guthrie*, 945 F.2d 1163, 1165–66 (10th Cir. 1991) (finding that individual suits for injunctive and declaratory relief cannot be brought where a class action with the same claims exists); *Horns v. Whalen*, 922 F.2d 835, 835 & n.2 (4th Cir. 1991); *Gillespie v. Crawford*, 858 F.2d 1101, 1103 (5th Cir. 1988) (once a class action has been certified, "[s]eparate individual suits may not be maintained for equitable relief"); *Bennett v. Blanchard*, 802 F.2d 456, 456 (6th Cir. 1986) (affirming dismissal of a case when the plaintiff was a member in a parallel class action); *Goff v. Menke*, 672 F.2d 702, 704 (8th Cir. 1982) (since class members generally "cannot relitigate issues raised in a class action after it has been resolved, a class member should not be able to prosecute a separate equitable action once his or her class has been certified").

individual would be removed.

*See D.V.D. v. U.S. Dep't of Homeland Sec.*, No. 25-cv-10676 (BEM), 2025 WL 1142968, at *11 (D. Mass. Apr. 18, 2025). Because Barrios was removed after February 18, 2025 pursuant to a final removal order that designated a country of removal different than the country he was removed to, Barrios is unquestionably a member of the *D.V.D.* certified class. *See id.* Further, because the *D.V.D.* class was certified pursuant Fed. R. Civ. P. 23(b)(2), membership in the class is mandatory with no opportunity to opt out. *See Wal-Mart Stores, Inc. v Dukes*, 564 U.S. 338, 361–62 (stating that Rule 23 "provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the [d]istrict [c]ourt to afford them notice of the action."); *Batalla Vidal v. Wolf*, 501 F. Supp. 3d 117, 137 (E.D.N.Y. 2020) (Garaufis, J.) ("[T]he [g]overnment is correct that Rule 23(b)(2) does not require district courts to give notice or the opportunity for class members to opt out...."). Thus, because Barrios' claims are duplicative of and subsumed by the claims asserted in *D.V.D.*, this action should be dismissed without prejudice or stayed pending resolution of the class claims in that case.

## IV. ANY CLAIM FOR MONEY DAMAGES UNDER 42 U.S.C. § 1983 IS BARRED BY SOVEREIGN IMMUNITY

Any purported 42 U.S.C. § 1983 claim is barred by sovereign immunity. In light of the *pro se* Petitioner's citation to § 1983, *see* Petition, at § 2 (Basis for Jurisdiction), Respondents construe the Petition to attempt to assert a § 1983 claim. But the United States is immune from suit unless it consents to be sued. *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33-34 (1992) (noting that sovereign immunity waivers "must be unequivocally expressed" and are "construed strictly in favor of the sovereign"). Congress has not authorized a claim under 42 U.S.C. § 1983 against federal actors. *Spinale v. U.S. Dep't Agric.*, 621 F. Supp. 2d 112, 116 (S.D.N.Y. 2009). Moreover, the doctrine of sovereign immunity bars § 1983 claims, as here, asserted against federal agencies

and federal employees sued in their official capacities. See *Forjone v. Dep't of Motor Vehicles*, No. 19-cv-578 (DRH), 2019 WL 5684437, at *6 (N.D.N.Y. Nov. 1, 2019) (citing *Olmeda v. Babbits*, No. 07-CV-2140 (NRB), 2008 WL 282122, at *5 (S.D.N.Y. Jan. 25, 2008)). Thus, any § 1983 claim is barred by sovereign immunity.

## V.  THE PETITION SHOULD NOT OTHERWISE BE CONSTRUED AS A CLAIM FOR MONEY DAMAGES

The Court should likewise decline to construe the Petition to assert a non-§ 1983 civil claim. In certain circumstances, a court may construe a habeas petition as a civil action. *See Thompson v. Choinski*, 525 F.3d 205, 209 (2d Cir. 2008). Petitioners have also gestured at seeking monetary damages in the Petition. *See* Petition, at § IV (Relief) ("Putative money damages and exemplary damages claimed is $500,000").

As an initial matter, and, in any event, monetary damages are simply not available through a habeas petition. *See, e.g., Troy as Next Friend Zhang v. Barr*, 822 F. App'x 38, 40 (2d Cir. 2020) (affirming district court's finding that money damages were not available through a habeas petition) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 494, (1973); *Cody v. Henderson*, 936 F.2d 715, 720 (2d Cir. 1991).

Further, the Petition fails to provide this Court with a basis to determine what claim Petitioners could assert, let alone against whom. For example, if Petitioners were to be asserting a claim pursuant to pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), then the Petition fails to state a claim against Respondents because it contains no allegations against them. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (holding that "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). The Supreme Court has been clear that *Bivens* should not be extended to any "new contexts." *Egbert v. Boule*, 596 U.S. 482, 492 (2022).

Moreover, *Bivens* has been found not to extend to the immigration context. *See Owusu-Boateng v. U.S. Citizenship & Immigr. Servs.*, No. 22-cv-812 (OAW), 2025 WL 832198, at *3 (D. Conn. Mar. 17, 2025) (recognizing that "the Supreme Court steadfastly has rebuffed attempts to expand *Bivens* remedies beyond [the already recognized] isolated constitutional contexts, and in particular, the Court has declined to apply them to the immigration context, where Congress has established comprehensive regulatory schemes.") Nor can the Petition be interpreted to assert a "negligence" claim pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2401(b), 2671-80, *see* Petition, at III (Statement of Claim) and IV (Relief), Petitioners has not even attempted to show that they exhausted his administrative remedies before filing suit. *See generally* Petition; *see also* 28 U.S.C. §§ 2401(b), 2675. Accordingly, the Court should not construe the Petition to assert a non-§ 1983 civil claim.

## CONCLUSION

For the foregoing reasons, Respondents respectfully request that this Court deny the Petition, in its entirety, and grant Respondents such other and further relief as this Court may deem just and proper.

Dated: Brooklyn, New York
April 29, 2025

JOHN J. DURHAM
United States Attorney
Eastern District of New York
*Counsel for Respondents*
271 Cadman Plaza East, 7th Floor
Brooklyn, New York 11201

By:    *s/ Philip R. DePaul*
Philip R. DePaul
Assistant United States Attorney
(718) 254-7503
philip.depaul@usdoj.gov

TO: Gloria Browning Vaamondes Barrios, Plaintiff *pro se* (by FedEx and email, as well as copies of all unpublished cases and cases reported exclusively on computerized databases that were cited therein pursuant to Loc. Civ. R. 7.2)